IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| HARRISON BROTHERS DRY DOCK & REPAIR YARD, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 08-0486-WS-B |
| PAN AGRI INTERNATIONAL, INC., etc., et al., | ) ) ) | |
| Defendants. | ) ) | |

**ORDER**

This matter is before the Court on the plaintiff's motion to strike the affidavit and reports of defense expert Michael Schiehl. (Doc. 93). The parties have filed briefs and other materials in support of their respective positions, (Docs. 93, 99, 102), and the motion is ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes the motion is due to be granted.

**BACKGROUND**

The plaintiff performed certain work on the defendant Barge BIG K-3 ("the Barge") pursuant to an agreement with defendant Pan Agri International, Inc. ("Pan Agri"), the Barge's owner. The Barge was eventually placed in dry dock, and the dry dock sank several days later.

Count One of the complaint alleges that the defendants have not paid approximately $354,400 for dry docking, repairs, wharfage and other work. Count Two alleges that Pan Agri is contractually responsible for approximately $62,241 in damage from the dry dock's sinking. (Doc. 1).

Count One of the counterclaim alleges that the plaintiff breached its contract with Pan Agri by charging for certain work improperly undertaken and by charging excessive

sums for certain other work performed, resulting in damages exceeding $100,000.  Count

Two alleges that the plaintiff negligently allowed the Barge to sustain salt water damage,

resulting in damages exceeding $100,000.[1]  Count Three alleges that Pan Agri is entitled

to return of monies paid the plaintiff, exceeding $100,000, under theories of restitution

and quantum meruit.  (Doc. 44).

The Rule 16(b) scheduling order required that the defendants' expert reports be

provided no later than April 30, 2009.  (Doc. 29 at 2).  That deadline was subsequently

moved to June 11, 2009.  (Doc. 67 at 4).  Schiehl's report was delivered by telefax on the

appointed date.  (Doc. 93, Exhibit A at 1).  The 1½-page report, which has never been

amended, is the very picture of brevity.   The first three substantive paragraphs may be

summarized as follows:

1.  "I can expertly opine on the many activities, time and charges as set forth in

[the plaintiff's] documents ...."

2.  "With regard to drydock failures," Schiehl has experience with salvage, surveys

for cause of loss, and costs of repair.

3.  "With regard to costs for repairs and new construction," Schiehl's experience

"gives [him] current insight and historical knowledge of reasonable costs."

(Doc. 93, Exhibit A).

The remaining four substantive paragraphs of the report are quoted in full below:

4.  "My testimony regarding the alleged delays in providing documents and

drawings will address the normal delay in the approval process that has no time

constraints or priorities to expedite reviews and approvals."

5.  "My testimony regarding [the plaintiff's] estimates and charges for work done

is that they are excessive of the norm [sic] for this type of work across the industry."

6.  "My testimony regarding [the plaintiff's] exhibits will address the numerous

---

[1]Count Two also alleges damage to the Barge from a collision or allision.  The
defendants have withdrawn this portion of Count Two.  (Doc. 90 at 12).

duplications."

7. "My testimony will address [the plaintiff's] reluctance to proceed with requested work when [the plaintiff] had signed contracts and agreements signed by the president of Pan Agri guaranteeing payment."

(*Id.*).

On July 13, 2009 (three days after the discovery period expired), the defendants delivered to the plaintiff Schiehl's "work papers." (Doc. 92, Exhibit X; Doc. 99 at 9). An interpretation of these documents has not been provided, but they appear to represent Schiehl's summary of his findings on a review of the plaintiff's exhibits, including primarily notations of "duplicate" and lists of workers and time worked. The defendants insist that the work papers do not constitute an expert report, and they assure the Court the papers will not be offered as exhibits at trial. (Doc. 99 at 8-9).

The plaintiff filed a motion for partial summary judgment on July 31, 2009, (Doc. 84), the deadline established by the amended Rule 16(b) scheduling order. (Doc. 67 at 4). The defendants' opposition was filed on August 28, 2009. (Doc. 90). Three days later (after the deadline imposed by Court order, (Doc. 88)), the defendants filed their exhibits. (Doc. 92). Among them is an affidavit from Schiehl, which can be summarized as follows:

1. The plaintiff's alleged damages from the sinking of the dry dock (other than a $1,005.80 charge for tug service) represent pre-existing damage, not damage caused by the sinking.

2. The dry dock was unsuitable for lifting the Barge.

3. The only cause of the dry dock sinking was water leakage into its compartments.

4. The plaintiff should not have attempted to dry dock the Barge without first determining its tanks were tight and capable of being completely dewatered.

5. The plaintiff should not have attempted to dry dock the Barge without first

ascertaining that its lift capacity was sufficient to dry dock the Barge.

   6.  The plaintiff's failure to test the dry dock and disclose the existence of leaks and their potential consequences portended foreseeable delays in completing the contract.

   7.  It should not have required more than 60 days for the plaintiff to complete the work called for by the contract.  Large amounts of work were not effected in a timely manner, apparently because the plaintiff elected to wait until the Barge was in dry dock even though the repairs could have been performed afloat.

   8. Pan Agri's failure to timely pay invoices is no excuse for the plaintiff's failure to timely complete the work, since the plaintiff had possession of the Barge and a lien against it.

(Doc. 93, Exhibit EE).

   The plaintiff moves to strike the report, the work papers and the affidavit from consideration on motion for summary judgment or at trial.

### DISCUSSION

   The defendants concede that Schiehl was retained by them to provide expert testimony in the case and that Rule 26(a)(2)(B) therefore applies.  "The report must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons therefor ..."  *Id*. 26(a)(2)(B)(i).

   Rule 37 provides in pertinent part as follows: "A party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed."  Fed. R. Civ. P. 37(c)(1).  The court "may impose other appropriate sanctions," either "[i]n addition to or in lieu of this sanction." *Id*.  The burden is on the nondisclosing party to demonstrate either that its failure to

disclose was substantially justified or that the failure is harmless.[2] This determination is left to the broad discretion of the lower court.[3] Similarly, the determination whether to exclude the non-disclosed information or to select a different sanction is left to the discretion of the lower court.[4]

## I. Expert Report.

The only opinion expressly stated in Schiehl's report is that the plaintiff's charges "are excessive of the norm for this type of work across the industry." The report also contains the implicit opinion that the charges contain "numerous duplications." The defendants suggest the report also "signaled" that Schiehl would opine as to delays in the plaintiff's completion of the work. (Doc. 99 at 10). It is questionable whether the report does even that, but in any event a subliminal "signal" that the expert holds some secret opinion is not enough to satisfy Rule 26; instead, an explicit statement of the content of the opinion is required, and that patently is lacking. The plaintiff was not required to guess as to the intent behind Schiehl's veiled language.

Rule 26 requires not only an identification of all opinions the expert will offer but also a statement of "the basis and reasons for them." The defendants suggest that Schiehl

---

[2]*E.g., Roberts ex rel. Johnson v. Galen, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (citing Fifth and Seventh Circuit cases); *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003) (citing a First Circuit case); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001); *accord Morrison v. Mann*, 271 Fed. Appx. 841, 845 (11th Cir. 2008).

[3]*E.g., David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002); *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998); *accord Morrison*, 271 Fed. Appx. at 845.

[4]*E.g., Roberts,* 325 F.3d at 783-84; *Trost v. Trek Bicycle*, 162 F.3d 1004, 1009 (8th Cir. 1998); *accord Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir. 2004). Indeed, "we give *particularly wide* latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." *Yeti*, 259 F.3d at 1106 (emphasis added).

satisfied this requirement simply by attaching his curriculum vita, because from that document the plaintiffs could infer that the sole basis of Schiehl's opinions will be his education, experience and credentials.  (Doc. 99 at 2).  The defendants confuse qualifications to render an opinion with factual and logical bases for rendering a particular opinion, and they identify no authority for the utterly implausible proposition that an expert satisfies Rule 26(a)(2)(B)(i) merely by submitting the C.V. that is separately required by Rule 26(a)(2)(B)(iv).[5]

The defendants offer a rash of  reasons that Schiehl's failure to identify the basis and reasons for his opinions should be overlooked.  First, they argue that the report of the plaintiff's expert is equally skeletal.  (Doc. 99 at 3).  Assuming without deciding that this is true, it is also irrelevant; compliance with Rule 26 is measured by the requirements of that rule, not by the performance of other parties.

Second, the defendants argue that the plaintiff, upon receiving Scheihl's inadequate report, was legally obligated to request a more detailed report and that, by failing to do so, the plaintiff lost any right to complain of its inadequacy.  (Doc. 99 at 3). Similarly, they argue that the plaintiff was obligated to depose Schiehl in order to discover the information that was wrongly omitted from his report.  (*Id.*).  The defendants cite no authority for these propositions; on the contrary, they quote *Whetstone Candy Co. v. Nestle USA, Inc.*, 2003 WL 25686830 at *3 (M.D. Fla. 2003), for the proposition that "the sanctions available under Rule 37(c)(1) are self-executing, in that the opposing party is not required to first seek a motion to compel the information ...."  (Doc. 99 at 7-8).  A wealth of other authority also weighs against the defendants.[6]

---

[5]A physician, for example, presumably relies upon her training and experience in opining that a fellow doctor was negligent, but her C.V. would hardly substitute for an explanation of how she reached the conclusion the defendant behaved negligently.

[6]*E.g., Ciomber v. Cooperative Plus, Inc*., 527 F.3d 635, 642 (7th Cir. 2008) ("Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony."); *accord Williams v. Daimler Corp*., 2008 WL 4449558

Third, the defendants suggest that when, as here, an expert's opinions do not concern "highly complex scientific matters," Rule 26 should not be rigorously applied. (Doc. 99 at 1, 4).  According to the advisory committee notes, however, under Rule 26 a retained expert "must prepare a detailed and complete written report" which must "set forth the substance of the direct examination."  Nothing in this language hints that some experts need not provide the basis of and reasons for their opinions.  The defendants again cite no authority for their position, and the Court will not supply the deficiency.

In summary, on the argument and authority provided the Court must conclude that Schiehl's report offers only two opinions (that charges were excessive and duplicative) and offers no basis or reasons even for them.  The report is therefore in violation of Rule 26.  *See, e.g., Romero v. Drummond Co.*, 552 F.3d 1303, 1323 (11th Cir. 2008) (no abuse of discretion in excluding testimony from experts whose reports merely recited the general subject matter of their expected testimony and did not provide "sufficient specificity to allow [the opponent] to prepare for rebuttal or cross-examination"); *OFS Fitel, LLC v. Epstein, Becker and Green, P.C.*, 549 F.3d 1344, 1363 (11th Cir. 2008) (expert's affidavit that "provides no meaningful analysis of how and why [the defendant's] actions breached the standard of care [as the expert opined]" did not satisfy Rule 26); *Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir. 2004) (no abuse of discretion in excluding declaration of an expert witness for whom no expert report was ever provided, because "compliance with the requirements of Rule 26 is not merely

_____

at *5 (N.D. Miss. 2008); *Berryhill v. Village of Streamwood*, 2004 WL 1444879 at *5 (N.D. Ill. 2004) ("Plaintiff was entitled to a report in conformity with the Rule and is not required to effectively bail out the defendants by taking [the expert's] deposition and thereby rendering the violation harmless."); *Bonesmo v. Nemours Foundation*, 253 F. Supp. 2d 801, 811 (D. Del. 2003) (because Rule 26 requires a detailed report, "the opposing party is not required to depose the expert to develop what his opinion is or the reasons for it"); *New Colt Holding Corp. v. RJG Holdings, Inc*., 2003 WL 23508131 at *1 & n.2 (D. Conn. 2003) (describing as "without merit" the proponent's argument that the opponent "may not move to exclude [experts providing inadequate reports] unless [the] experts are first deposed").

aspirational"). The burden thus shifts to the defendants to show that the violation was either substantially justified or harmless.

The defendants' only effort to show substantial justification is to suggest that, until they took certain depositions in July (after the report's due date), Schiehl did not have complete information and could not provide a final statement of his opinions. (Doc. 99 at 4). The defendants do not identify what information critical to Schiehl's opinions was first disclosed during the July depositions, but in any event the plaintiff's evidence makes clear that the depositions were taken at the last minute due to the defendants' failure to plan adequately. Knowing that their expert's report was due on June 11, a month before the July 10 discovery deadline, the defendants did not first seek depositions until May 20,[7] and even then they planned to take only three depositions — on June 10, 11 and 12 — with all others to be taken in July. (Doc. 102, Exhibit B at 4-5). Two of the three June depositions were then postponed to July due to defense counsel's schedule. (*Id.*, Exhibits C, D).[8]

Appellate courts have routinely found no substantial justification when the non-disclosing party failed to act prudently to ensure timely disclosure.[9] *Fitel*, where the

---

[7]The parties conducted their Rule 26(f) meeting on December 1, 2008, (Doc. 28 at 1), and the defendants could have sought depositions immediately thereafter. (Doc. 23 at 2, ¶ C).

[8]The parties reserved one day for each depositions, although defense counsel thought this more than necessary. He canceled the June 12 deposition because of a "court matter," and his flight to Mobile was later canceled, which precluded depositions on June 10.

[9]*See Southern States*, 318 F.3d at 598 (awaiting discovery from opponent, without filing a motion to compel such discovery); *Yeti*, 259 F.3d at 1107 (awaiting supplemental report from the opponent's expert without providing a preliminary report or seeking an extension of time); *Bowe v. Consolidated Rail Corp.*, 2000 WL 1434584 at **3-4 (6th Cir. 2000) (awaiting a site inspection without seeking an extension of time); *Trost*, 162 F.3d at 1008 (a plaintiff awaiting the defense expert's report); *see also Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008) (party's decision to withhold expert report until he

Court found substantial justification, is not to the contrary, because the delay in depositions was at the request of the other party, which was fully aware that honoring its request would delay the expert's report. 549 F.3d at 1363-65. By waiting until the eleventh hour to commence discovery, the defendants created the box in which they find themselves. This is not the stuff of which substantial justification is made.

The burden of showing harmlessness is also on the defendants. Because they do not address harm, they have not carried their burden.[10]

## II. Work Papers.

The work papers were untimely produced on July 13. Because the defendants insist the work papers do not constitute an expert report, (Doc. 99 at 8), they cannot be used to satisfy Rule 26. The defendants, (*id.* at 9), suggest they should be allowed to use the work papers as "fodder for question[ing]" Schiehl but, as discussed in Part IV, he will not be allowed to testify as an expert at trial.

## III. Affidavit.

The defendants admit that Schiehl's affidavit "does not deal with the invoices for contract work ordered by Pan Agri," (Doc. 99 at 9), which was the sole subject of the opinions expressed in Schiehl's expert report. Instead, the affidavit offers wholly new opinions on wholly different subjects.

---

received and reviewed deposition and trial transcripts did not substantially justify the report's tardiness, where the expert could have produced a preliminary report subject to amendment after the transcripts were received and the party could have moved to extend the discovery period).

[10]Perhaps an argument could have been constructed that the work papers produced in July provided the detail missing from Schiehl's June report as to excessive and duplicative charges and rendered harmless the non-compliance with Rule 26. However, the defendants raised no such argument, and it thus cannot form the basis of any relief.

An untimely expert report, though otherwise complete, violates Rule 26. *Fitel*, 549 F.3d at 1363. Assuming without deciding that the information disclosed in the affidavit would have been adequate to satisfy Rule 26 had it been disclosed in a timely manner, it was not produced until August 31 — 81 days after it was due, 52 days after the close of discovery, and 11 days before the plaintiff's motion for summary judgment became ripe. By the time the defendants responded to the motion to strike, the motion for summary judgment had been otherwise ripe for almost two weeks and the final pretrial conference was four weeks away.

The defendants do not pretend that Schiehl's tardy affidavit complies with Rule 26, and they do not assert that the plaintiff was unharmed thereby. Instead, they argue they were substantially justified in producing it when they did. (Doc. 99 at 10). In fact, however, their argument reaches only the first of the eight opinions expressed in the affidavit. As to that opinion, the defendants rely on Schiehl's supplemental affidavit for the proposition that the evidence supporting his opinion was "buried in the piles of exhibits" produced by the plaintiff, which required "an exhaustive review of all the records produced" and a "consider[ation]" of the July depositions. (Doc. 99, Schiehl Affidavit, ¶¶ 4-5).

The problems with this argument are legion. In the first place, the only evidence before the Court is that the plaintiff produced documents to the defendants on or about April 13, (Doc. 102 at 8 n.4), over 4½ months prior to Schiehl's affidavit. There is no indication that this production did not include the pages relied on by Schiehl or that, if it did not, the request called for such production and the defendants moved to compel production. Nor, to the extent the important documents were "buried" in the defendants' production, is there evidence that the defendants propounded interrogatories to determine what documents the plaintiffs relied on in calculating the costs of dry dock repair. As noted in Part I, there is no indication the depositions were actually significant to Schiehl's opinions (he claims merely to have "considered" them); even if they were, the

-10-

responsibility for the lateness of the depositions lies with the defendants. In short, the evidence on which Schiehl relied was in the defendants' possession long before August 31 and, to the extent it was not, that is the fault of the defendants themselves.

Second, and relatedly, since the defendants had the necessary documents in their possession a full two months before the June 11 deadline, they have no excuse for Schiehl's failure even to identify in his report — or at any time in the succeeding 11½ weeks[11] — any opinions concerning dry dock damage, whether final or tentative. It may well be that Schiehl did not begin his review of documents until June or July, or even August, but that again is the fault of the defendants, not the plaintiff.

Third, Schiehl admits that he finalized his opinions in late August "only under intense pressure from Pan Agri's attorneys owing to their need to file a response to Plaintiff's summary judgment motion." (Doc. 99, Schiehl Affidavit, ¶ 6). That is, the defendants knew full well that Schiehl held opinions concerning dry dock damage, yet they elected not to disclose that information to the plaintiff until compelled to do so by the briefing schedule on motion for summary judgment.

Fourth, Schiehl admits that he had not finalized his opinions because he was tending instead to "other important business." (Doc. 99, Schiehl Affidavit, ¶ 6). No doubt Schiehl, like most people, had other things to do, but that does not amount to a substantial justification for his failure to render opinions until late in the summary judgment procedure, especially when he possessed adequate information from which to form those opinions for several months before he actually expressed them. *Cf. Shaw v. Pizza Hut, Inc*., 2009 WL 128440 at *2 (M.D. Fla. 2009) ("Plaintiff's experts' busy schedules are not Defendant's problem.").

The defendants offer no excuse for the untimely disclosure of the remaining

---

[11]Rule 26(e) requires that expert disclosures be supplemented as provided by Court order. The Rule 16(b) scheduling order requires that supplementation occur "at appropriate intervals" and "seasonably." (Doc. 29 at 2).

opinions in Schiehl's affidavit.  As to the seventh and eighth of these opinions, they claim the expert report actually expresses them by stating that the plaintiff "delayed the repair of the Pan Agri barge beyond normal commercial standards."  (Doc. 99 at 10).  The fourth and seventh paragraphs of the report, on which the defendants rely for this proposition, plainly do not contain such language.  At best, Schiehl intimated he was prepared to address (in a fashion left utterly blank) the defendants' delays in executing documents and the plaintiff's reluctance to proceed with requested work.  That is not the expression of an opinion but the identification of a subject matter as to which an opinion may someday be rendered.  Even had the report adequately identified Schiehl's opinions in this regard, the defendants have offered no substantial justification for his failure to provide the basis and reasons for his opinion before August 31.

In summary, none of the opinions expressed in Schiehl's affidavit were expressed in his expert report, nor were the bases of and reasons for these opinions given therein. The defendants, who bear the burden, have shown neither substantial justification for their violations of Rule 26 or lack of harm from those violations.

## IV.  Appropriate Sanction.

"The alternative sanctions [to exclusion] referenced in the rule are primarily intended to apply when a party fails to disclose evidence helpful to an *opposing* party." *Southern States v. Sherwin-Williams*, 318 F.3d at 595 n.2 (emphasis in original).  Thus, "absent some unusual extenuating circumstances not present here, the appropriate sanction when a party fails to provide certain evidence to the opposing party as required in the discovery rules is preclusion of that evidence from the trial."  *Klonoski v. Mahlab*, 156 F.3d 255, 271 (1st Cir. 1998).

The opinions the defendants withheld are not helpful to the plaintiff, and the defendants identify no unusual extenuating circumstances that could render exclusion of Schiehl's report, work papers and affidavit an inappropriate remedy for their violations of

-12-

Rule 26.  Indeed, they do not argue for any remedy short of exclusion.  Accordingly, that sanction will be imposed.  Because these documents contain all expert opinions Schiehl could render in this action, their exclusion dictates exclusion of Schiehl as an expert witness.

### CONCLUSION

For the reasons set forth above, the plaintiff's motion to strike is **granted**. Schiehl's expert report, work papers and affidavit will not be considered on motion for summary judgment or at trial, and Schiehl will be excluded as an expert witness at trial.

DONE and ORDERED this 9th day of October, 2009.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE